John J. Ziegelmeyer III, MO No. 59042, *pro hac vice to be filed*
Brad K. Thoenen,, MO No. 59778, *pro hac vice to be filed*
Kevin A. Todd, MO No. 73048, *pro hac to be filed*
HKM EMPLOYMENT ATTORNEYS LLP
1501 Westport Road
Kansas City, MO 64111
Telephone: (816) 875-3332
E-mail:  jziegelmeyer@hkm.com
Email:   bthoenen@hkm.com
Email:   ktodd@hkm.com

Cecilia N. Brennan, Esq. (SBN 243954)
HKM EMPLOYMENT ATTORNEYS LLP
401 West A Street, Suite 200 (#77)
San Diego, California 92101
Tel/Fax: (619) 717-6410
Email:  cbrennan@hkm.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA CRAVENS and TONYA BEARDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RETAIL SERVICES WIS CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No.:  **'23CV2313 GPC MMP**<br><br>**CLASS AND COLLECTIVE ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA), 29 U.S.C. § 201, et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Christina Cravens ("Ms. Cravens") and Tonya Bearden (Ms. Bearden") (collectively, "Plaintiffs"), and all those similarly situated, by and through the undersigned attorneys, hereby bring this Collective and Class Action Complaint against Retail Services WIS Corporation ("WIS" or "Defendant") and allege as follows:

## I.    NATURE OF THE CASE

1.    Plaintiffs bring this case as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); and bring Unjust Enrichment claims and claims for violations of the Missouri Minimum Wage Law ("MMWL"), R.S. Mo. § 290.500 *et seq.* as Rule 23 Class Actions due to WIS' failure to compensate Plaintiffs and other similarly situated hourly, non-exempt inventory auditors for work that WIS has suffered and permitted them to perform for its own benefit as their employer. Count I and II are brought on behalf of the named Plaintiffs and all others similarly situated. Count III is brought on behalf of Plaintiff Tonya Bearden on behalf of herself and all others similarly situated.

2.    Count IV is brought on behalf of Christina Cravens individually, for retaliation in violation of the FLSA.

3.    WIS employs the Plaintiffs and thousands of other similarly situated employees in the United States as inventory auditors and/or in other functionally equivalent hourly positions (collectively, Plaintiffs and the other auditors will be referred to herein as the "Auditors"). These positions are not exempt from the overtime or minimum wage provisions of the FLSA.

4.    Nonetheless, as a matter of policy and practice, WIS has failed to compensate the Auditors with overtime pay because it has systematically failed to fully record and compensate them for all their hours worked.

5.    Specifically, WIS requires its Auditors—of which Plaintiffs were two—to load and unload equipment, travel between their meeting place and various audit sites, and receive daily briefings, while off the clock. On average, Plaintiffs estimate that they worked

between 2.5 and 4 hours each shift that were not captured in the time that WIS recorded for the shift or the time that WIS paid them for. This uncompensated, off-the-clock work is integral and indispensable to the principal activities of the Auditors' jobs. WIS's policies and practices have deprived the Auditors of substantial amounts of wages, including overtime, which they have earned and to which they are entitled.

6.    Plaintiffs—on behalf of themselves and all of the other Auditors—seek compensation and credit for all unrecorded and uncompensated work time, including overtime, liquidated damages, and/or all other relief permitted by law. Plaintiffs also request reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## II.    JURISDICTION AND VENUE

7.    The FLSA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b), and bars retaliation against employees who complain about violations of the FLSA to their employer, 29 U.S.C. § 215(a)(3).

8.    This Court has federal question jurisdiction in this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the FLSA. The Court also has jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy in this action exceeds $75,000, exclusive of interests and costs, and because the parties are residents of different states.

9.    This Court has supplemental jurisdiction over any state claim raised by virtue of 28 U.S.C. § 1367(a).

10.    This Court has personal jurisdiction over Defendant because Defendant has its headquarters and principal place of business in this judicial district.

11.    Venue is proper under 28 U.S.C. §1391(b) and (c) because Defendant has its headquarters and principal place of business in this judicial district.

### III.    PARTIES

12.    Plaintiff Christina Cravens is a resident of Crawford County, Kansas. She was employed by Defendant as an Auditor based out of Pittsburg, Kansas between approximately July 2023 and September 2023. Prior to her work in Kansas, Plaintiff Cravens worked for Defendant for a period of time in California.

13.    Plaintiff Tonya Bearden is a resident of Jasper County, Missouri. Plaintiff was employed by Defendant as an Auditor based out of Joplin, Missouri between approximately July 2023 and August 2023.

14.    The Collective Action members, including Plaintiffs, are persons who have been employed by WIS as auditors in the United States at any time beginning three years before the filing of this Complaint.

15.    Defendant Retail Services WIS Corporation is a Delaware corporation, with its principal place of business in San Diego, California. It can be served through its registered agent, National Registered Agents Inc., at 330 N. Brand Blvd., Glendale, CA 91203.

16.    WIS does business in the states of Missouri and Kansas and nationwide.

17.    Upon information and belief, at all times relevant herein, WIS grossed more than $500,000 a year.

18.    At all times relevant herein, WIS has been an enterprise within the meaning of 29 U.S.C. § 203(r).

19.    At all times relevant herein, WIS has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. §203(s).

20.    At all relevant times herein, WIS was and is an "employer" of Plaintiffs as defined by the FLSA and the MMWL.

21.    At all relevant times herein, Plaintiffs were "employees" within the meaning of both the FLSA and MMWL.

## IV.  FACTUAL ALLEGATIONS

### a.  *Background, Schedules, and Pay Rates*

22.   WIS is an international corporation that provides inventory/data collection and merchandising services to large retail stores across the United States. WIS is the second-largest inventory services company in the world and has more than 200 offices worldwide.

23.   WIS contracts with retail stores to count the stores' inventory. WIS has employed thousands of Auditors—including the Plaintiffs—in the United States.

24.   All Auditors—including the Plaintiffs—have shared a common job description. The principal job duty of Auditors is to travel to retail stores and physically count the stores' inventories.

25.   WIS has paid Auditors—including the Plaintiffs—by the hour and has classified them as "nonexempt" employees who are entitled to minimum wage and overtime compensation when they work overtime as defined by the FLSA.

26.   WIS compensates its Auditors, including Plaintiffs, at two different rates for time spent traveling and attending crew briefings prior to the inventory counts, and for time spent counting inventory. For example, the pay stubs currently in Ms. Cravens's possession indicate that WIS compensated her at a rate of $12.00 per hour for time spent traveling and attending crew briefings ("Travel Rate") and at a rate of $17.00 per hour for time spent counting inventory ("Inventory Rate").

27.   WIS places its Auditors in locations such as Pittsburg, KS and Joplin, MO for the company's convenience. However, its employees, including Plaintiffs, ordinarily count inventory at different retail stores every day, often far away from their homes and their central work location determined by WIS.

28.    For example, though Ms. Cravens's home location was in Frontenac, KS and she worked out of Pittsburg, KS, she was often required to make a roughly 120-mile journey to the Kansas City metropolitan area to perform her auditing work for WIS.

29.     Similarly, Ms. Bearden lived and had her central work location as determined by WIS in Joplin, MO. She was often required to travel to Springfield, MO, Branson, MO, Columbia, MO, Wichita, KS, and the Kansas City metropolitan area to perform her auditing work for WIS.

30.     Plaintiffs and the other Auditors worked over 40 hours in a week on numerous occasions. In at least some of the weeks in which the Plaintiffs and the other Auditors worked over 40 hours, they actually recorded over 40 hours merely in on-the-clock work. This recorded time, however, did not include the numerous off-the-clock hours WIS required and/or suffered and permitted them to work each week, as described in more detail below. All these unrecorded hours are uncompensated overtime hours. During other weeks, Plaintiff and Auditors recorded fewer than 40 hours of on-the-clock work, but because of the numerous off-the-clock hours WIS required and/or suffered and permitted them to work each week, they actually worked over 40 hours during several of those weeks. These off-the-clock hours are also uncompensated.

31.     Even during weeks in which the Plaintiffs and the other Auditors worked fewer than 40 hours, WIS still has failed to compensate them for all their work time, as described in more detail below. As a result, WIS has appreciated the benefit of and been enriched by the labor provided by the Auditors without paying them for the full value of these services.

b.  *Off-the-clock work, including time estimates*

32.     While WIS' Auditors travel to retail stores in the surrounding region, the company advertises its Auditor positions as being located in communities such as Pittsburg, KS, Joplin, MO, Noel, MO, and Neosho, MO. WIS places its auditor jobs in these locations for the company's benefit and convenience.

33.     WIS has directed and encouraged its Auditors—including the Plaintiffs—to gather at predetermined meeting sites in those communities and travel together as teams with their supervisors in a WIS-provided vehicle to the retail establishments where they

will be conducting that day's audit. The group transportation is designed to benefit WIS by helping ensure that its workforce arrives together in advance of the inventories and readies itself as a team to begin the inventories in a fashion more efficient than if the Auditors arrived individually.

34.    Although WIS does not formally require its Auditors to begin their day at the meet site, it uses several incentives to make the meet site an effective requirement.

35.    If an Auditor chooses to travel to that day's audit site on their own, they are not compensated for any of that travel time. If they arrive at the meet site and travel with their team, they are compensated for at least part of that travel time.

36.    Furthermore, WIS supervisors consistently tell Auditors that they want them to start their day at the meet site, because that gives the company control over where the Auditors are, what they're doing, and what time they arrive at the audit site.

37.    As a result, Auditors—including the Plaintiffs—have been required to rise early in the morning to drive from their home to the meeting site in time in to travel with the team of fellow Auditors and a supervisor in the WIS-provided vehicle on what is often a two-or-more-hour journey to the audit site.

38.    WIS's policy is that it will compensate Auditors at a "travel" wage for time spent traveling in the WIS-provided vehicle, but only after the first hour of travel time at the beginning of the day, and before the last hour of travel time at the end of the day. WIS's policy is that it will not compensate Auditors at all for the first hour or last hour of travel time.

39.    For example, if an Auditor is scheduled to arrive at the meet site at 4:00 a.m., their work day begins at that time. Depending on the time they arrive and what initial work has already been done, Auditors may help load equipment into the company vehicle upon arrival. They then get on the road and drive to the audit site, often two or more hours away from the meet site. WIS starts the Auditors' pay clocks for the day one hour after they leave the meet site.

40.     At the end of the day, WIS ends its Auditors' pay clocks one hour before they arrive back at the meet site at the end of the day. Their last hour of travel and any time spent ensuring equipment is secure and ready for the next day is not compensated.

41.     While traveling to the audit site, Auditors typically spend at least part of the time planning for the day ahead. Team leaders brief newer Auditors on the store they're auditing that day, what the store manager's preferences are, and what to expect at the location. WIS does not log the time spent on this task.

42.     This travel time is substantial. For instance, the pay stubs currently in Ms. Cravens's possession indicate that during a one-week pay period covering July 14 through July 20, she recorded over 18 hours of time traveling with the audit team in the WIS-provided vehicle, not including the unrecorded travel time of up to two or more hours per inventory.

43.     WIS has required its Auditors—including the Plaintiffs—to arrive at the audit site at least 15 minutes before the audit begins to unload and set up their equipment. In fact, because Auditors travel together in a WIS-provided vehicle, they typically arrive as a group well in advance of the 15-minute deadline, sometimes as much as an hour or more in advance of the crew briefings. The geographic and logistical constraints prevent Auditors from using for their own benefit the time they spend waiting for the briefing. But WIS does not keep accurate records of the time Auditors spend waiting at the site for crew briefing and inventory counts to begin, nor do they pay Auditors for that time.

44.     During the uncompensated wait time at the beginning of the shift, WIS has also required its Auditors to engage in an array of productive, work-related tasks. These tasks have included unloading equipment from the WIS-provided vehicle; receiving and preparing their electronic scanners, which are used for counting the inventory; setting up the equipment inside the store; and booting up the computer operating systems.

45.     After this off-the-clock work when they arrive at the audit site, Auditors start being paid once they log into their machines and start scanning items. Their pay cuts off again after the completion of their last scan.

46.     WIS's policies and practices have been for the Auditors—including the Plaintiffs—to be off the clock after completing the inventory counts. However, this does not account for the time Auditors must spend shutting down and repacking their work gear and equipment and returning them to designated stockrooms or the company-provided vehicles—a process that routinely takes 10 to 20 minutes or more per inventory. All this time is off the clock and uncompensated as well.

47.     Auditors also must wait additional time off the clock for their supervisors to conduct "wrap-up" tasks and meetings. These wrap-up tasks include verifying the work performed by the Auditors during the day, completing paperwork, inputting the Auditors' work time for payroll purposes, printing voluminous reports showing the details of the inventories, submitting these voluminous reports to WIS's corporate headquarters and management personnel at the client retail store, and meeting with the retail store managers regarding discrepancies between the day's count and the stores' inventory estimates. Auditors, including Plaintiffs wait for their supervisors to complete this wrap-up process before they can leave the audit site. Auditors did not have this time to themselves or for their own benefit, as they had to wait for the completion of the supervisor's tasks on-site.

48.     During this waiting time, the Auditors also are subject to being called back by their supervisors to provide assistance. In fact, Auditors frequently perform additional scanning and counting while off the clock as a result of information gained during the wrap-up process and meetings with the retail managers. During this time, WIS requires Auditors doing the physical inventory counts to remove inventory tags previously attached to store shelves. The wrap-up meetings and tasks often result in thirty minutes to an hour of off-the-clock work per inventory for the Plaintiffs and Auditors.

49.    WIS automatically deducts 30 minutes from its Auditors' worked time every day for a meal break.

50.    On most days, Plaintiffs and WIS' other Auditors do not receive a bona fide 30 minute meal break.

51.    WIS often has not provided a physical time clock at the job sites or in the company-provided vehicles.

52.    WIS relies on its audit supervisors to keep track of the Auditors' hours worked at job sites where no physical time clock is present, and during travel time. The audit supervisors do not have a process for tracking the Auditors' time individually or accurately, but instead have recorded the compensable time as estimates for the group as a whole.

53.    WIS rewards audit supervisors for faster overall inventory counts and disciplines them for slower overall inventory counts. As a result of this policy, audit supervisors regularly have underreported the working hours of Plaintiffs and Auditors.

54.    For some inventories, WIS has provided a timekeeping mechanism that allows Auditors to clock themselves in and out, although not until after performing the pre-shift work and before performing the post-shift work described above.

55.    In sum, for each inventory, WIS has regularly required and/or suffered and permitted Plaintiffs and Auditors to work off the clock to spend up to two or more hours of group travel time between designated meet sites and inventory sites in WIS-provided vehicles; 30 minutes during auto-deducted meal breaks; 15 minutes to an hour of time prepping the inventories and otherwise waiting to begin work; 10 to 20 or more minutes of post-inventory cleanup time; and up to and thirty minutes to an hour having to wait for the supervisor to conduct their wrap-up activities and the additional inventory tasks that often occur during the wrap-up. Accordingly, the Auditors—including the Plaintiffs—routinely have worked up to four hours off the clock during each inventory.

56.    Many of the off-the-clock hours were worked during weeks where the Auditors worked over 40 hours a week. During those weeks, the Auditors were entitled to,

but did not receive, overtime compensation at 1.5 times their ordinary hourly rate for the off-the clock work in excess of 40 hours per week.

57.    Even during weeks in which the Auditors have not worked 40 or more hours, WIS has still failed to compensate them at their regular rate of compensation for all the hours they work, due to the regular off-the-clock work described above. WIS has been unjustly enriched by obtaining the benefit of this labor without paying Plaintiffs and Class members for the full value of their services.

58.    WIS has known and/or acted with reckless disregard of the fact that its timekeeping policies and procedures have caused the Plaintiffs and Auditors not to be compensated for all hours worked, but nonetheless WIS has failed to change its policies and provide Auditors with the wages to which they are entitled by law. WIS has been put on notice of the unlawfulness of its policies, and yet it has proceeded with a uniform policy of failing to compensate its Auditors for all hours worked in the face of analogous challenges made in prior lawsuits. In fact, WIS has demonstrated a pattern of paying millions of dollars to settle previous litigation on this very issue rather than bringing its policies and practices into compliance with applicable law.

59.    WIS is engaged in commerce.

60.    The Plaintiffs and Auditors have been either (1) engaged in commerce, (2) engaged in the production of goods for commerce, or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

61.    Plaintiff and Auditors have been employees whose job duties do not meet any of the exemptions set forth in the FLSA. Therefore, their jobs have been, in fact and law, not exempt from the minimum wage and overtime requirements of the FLSA.

62.    WIS has directed and/or suffered and permitted Auditors—including the Plaintiffs—to work in excess of 40 hours per week throughout the course of their employment.

63.     WIS has failed to pay the Auditors—including the Plaintiffs—overtime pay at a rate of one-and-one-half times their regular rate for hours worked in excess of 40 hours during a workweek.

**V.      COLLECTIVE AND CLASS ACTION ALLEGATIONS**

64.     Plaintiffs bring Count I as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and a proposed Collective of similarly situated employees defined as:

> "All individuals currently or formerly employed by WIS as an Auditor, inventory associate, or other equivalent hourly position in the United States at any time from three years before the filing of this Complaint through resolution of this action (the "Collective").

65.     Plaintiffs, individually and on behalf of other similarly situated employees defined above, seek relief on a collective basis challenging WIS's policy and practice of failing to compensate Plaintiffs and Auditors for work Defendant suffers and permits them to perform for its own benefit, including overtime compensation. The number and identity of other similarly situated persons yet to opt in and consent to be party plaintiffs may be determined from the records of WIS, and those who potentially will opt in may be easily and quickly notified of the pendency of this action.

66.     Plaintiffs bring Count II as a class action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23. The Nationwide Class that Plaintiffs seek to represent is composed of and defined as follows:

> "All individuals currently or formerly employed by WIS as an Auditor, inventory associate, or other equivalent hourly position in the United States at any time during the applicable statute of limitations. (the "Nationwide Class").

67.     Plaintiff Tonya Bearden, on behalf of herself and all others similarly situated, brings Count III as a class action pursuant to Federal Rule of Civil Procedure 23, for violation

of the Missouri Minimum Wage Law (MMWL), R.S. Mo. § 290.500 *et seq.* The Missouri Class that Plaintiff Bearden seeks to represent is composed of and defined as follows:

> "All individuals currently or formerly employed by WIS as an Auditor, inventory associate, or other equivalent hourly position in the State of Missouri at any time during the applicable statute of limitations. (the "Missouri Class").

68. **Numerosity.** WIS has employed thousands of Auditors in the United States from 2020 through the present, including more than 40 Class Members in Missouri. Class members are therefore far too numerous to be individually joined in this lawsuit.

69. **Existence and Predominance of Common Questions.** Common questions of law and/or fact exist as to the members of the Class, and in addition, common questions of law and/or fact predominate over questions affecting only individual members of the Class. The common questions include the following:

a.  Whether WIS knew or should have known that Plaintiffs and the putative members of the class and collective they seek to represent worked overtime hours without receiving compensation at time and one half their regular hourly rate of pay.

b.  Whether WIS's payroll, timekeeping, and compensation policies have caused it to be unjustly enriched by enjoying the benefit of labor for which it did not pay;

c.  Regarding the Missouri Class, whether WIS's payroll, timekeeping, and compensation policies have complied with the MMWL and its accompanying regulations; and

d.  Whether Plaintiffs and the Classes are entitled to damages and equitable relief, including but not limited to restitution and a preliminary and/or permanent injunction, and if so, the proper measure and formulation of such relief.

70.    **Typicality.** Plaintiffs' claims are typical of the claims of the Classes. WIS's common course of conduct in violation of law as alleged herein has caused Plaintiffs and the proposed Classes to sustain the same or similar injuries and damages. Plaintiffs' claims are thereby representative of and coextensive with the claims of the proposed Classes.

71.    **Adequacy.** Plaintiffs who have filed and/or will file a consent-to-join form pursuant to the 29 U.S.C. § 216(b) notice process may also be adequate representatives of the Class because their interests do not conflict with the interests of the members of the class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

72.    **Superiority.** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against WIS economically feasible. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

73.    In the alternative, the Class may be certified because

a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, which would establish incompatible standards of conduct for WIS; and

b. WIS has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## VI.    FACTUAL ALLEGATIONS REGARDING CHRISTINA CRAVENS' INDIVIDUAL CLAIMS

74.    Plaintiff Christina Cravens worked as an Auditor for WIS based out of Pittsburg, KS in 2023. Prior to that, she worked as an Auditor for WIS in California.

75.    In late August or early September 2023, Cravens raised complaints to her manager about Defendant's unlawful pay practices. In particular, Cravens complained that WIS was improperly deducting breaks that she never took from her pay, and that she was not being paid for the first and last hour of travel time as described above.

76.    Within about a week of that complaint, Cravens was suspended without pay, allegedly for a run-in she had with a coworker at the start of her shift.

77.    While Cravens was frustrated that one of her coworkers had caused the team to leave the meet site late, she did nothing to warrant a suspension.

78.    Shortly after being suspended, Cravens' employment was terminated.

79.    Cravens was a good employee who had done nothing to warrant termination.

80.    Under the circumstances, it is more likely that Cravens' termination was in retaliation for her report of WIS' unlawful pay practices.

## VII.    CAUSES OF ACTION

## COUNT I

**Violation of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*,**

**Failure to Pay Overtime Wages**

81.    The Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth, each and every allegation set forth above.

82.    The FLSA requires that employers whose employees are engaged in commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay employees overtime wages at one-and-one-half times their regular rate for hours worked in excess of 40 hours during a workweek. 29 U.S.C. § 207.

83.     WIS violated the FLSA by failing to pay Auditors—including the Plaintiffs—for all time worked, including overtime pay, because WIS required its Auditors to perform work without being compensated, and Auditors regularly worked in excess of 40 hours per week.

84.     The Plaintiffs and all similarly situated employees are victims of a uniform and companywide compensation policy that systematically denied Auditors their statutorily mandated overtime premium pay. This uniform policy, in violation of the FLSA, has been applied to all Auditors employed by WIS throughout the United States.

85.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). WIS knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. Therefore, the Plaintiffs and all similarly situated employees are entitled to all damages owed for the limitations period beginning three years preceding the filing of this Complaint, plus periods of equitable tolling.

86.     Plaintiffs and other similarly situated employees are entitled to recover an award in the amount of their unpaid overtime compensation.

87.     Plaintiffs and other similarly situated employees are entitled to recover an additional award of liquidated damages in an amount equal to the amount of unpaid overtime pay and/or prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

88.     Employers subject to the FLSA must "make, keep, and preserve" accurate records of all hours worked and the wages, hours, and other conditions and practices of employment. 29 U.S.C. § 211(c). It is unlawful for any person to violate § 211(c). 29 U.S.C. § 215(a)(5). 29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

89.    WIS has failed to maintain records accurately, as required by the aforementioned statutes and regulations, and failed to furnish the Plaintiffs and Auditors with statements accurately showing the hours they worked during the relevant time period.

90.    Where an employer's records are inaccurate or inadequate, employees need only produce sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference in order to prove they were improperly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). If an employer is unable to rebut the reasonableness of this inference, the court may award damages to the employee even if the result "be only approximate." *Id*.

91.    The Auditors—including the Plaintiffs—are entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees. 29 U.S.C. § 216(b).

## **COUNT II**

### **Unjust Enrichment**

92.    The Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth, each and every allegation set forth above.

93.    The Plaintiffs and Class members conferred on Defendant the benefit of their labor.

94.    Defendant has appreciated the benefit of this labor without paying the Plaintiffs and Class members for the full value of their services.

95.    Defendant's acceptance of this benefit without paying the Plaintiffs and Class members for the full value of their services is inequitable under the circumstances detailed herein.

96.    The Plaintiffs and Class members are entitled to recover the reasonable value of their services, including all wages owed and all other damages arising out of Defendant's failure to pay Plaintiff and Class members the full value of their services.

97.    The Plaintiffs, on behalf of themselves and all others similarly situated, seek all unpaid compensation, damages, penalties, interest, and attorneys' fees and costs recoverable under applicable law set forth below.

## COUNT III

### Violation of Missouri Minimum Wage Law, R.S. Mo. § 290.500 *et seq.*

98.    Plaintiff Bearden, on behalf of herself and all others similarly situated, reallege as if fully set forth, each and every allegation set forth herein.

99.    The Missouri Minimum Wage Law incorporates the overtime provisions of the FLSA, R.S. Mo. § 290.505.4.

100.    WIS violated the MMWL by failing to pay Auditors—including the Plaintiffs—for all time worked, including overtime pay, because WIS required its Auditors to perform work without being compensated, and Auditors regularly worked in excess of 40 hours per week.

101.    Plaintiff Bearden and all similarly situated employees are victims of a uniform and companywide compensation policy that systematically denied Auditors their statutorily mandated overtime premium pay. This uniform policy, in violation of the MMWL, has been applied to all Auditors employed by WIS throughout Missouri.

102.    As a result of the above violations, Plaintiff Bearden and all others similarly situated are entitled to the full amount of their lost overtime wages plus an amount equal to double the unpaid wages as liquidated damages and reasonable attorneys fees incurred in bringing this action. R.S. Mo. § 290.527. Therefore, the Plaintiffs and all similarly situated employees are entitled to all damages owed for the limitations period beginning three years preceding the filing of this Complaint, plus periods of equitable tolling.

103.    Employers subject to the FLSA must "make, keep, and preserve" accurate records of all hours worked and the wages, hours, and other conditions and practices of employment. 29 U.S.C. § 211(c). It is unlawful for any person to violate § 211(c). 29 U.S.C. § 215(a)(5). 29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer

shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

104. WIS has failed to maintain records accurately, as required by the aforementioned statutes and regulations, and failed to furnish the Plaintiffs and Auditors with statements accurately showing the hours they worked during the relevant time period.

105. Where an employer's records are inaccurate or inadequate, employees need only produce sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference in order to prove they were improperly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). If an employer is unable to rebut the reasonableness of this inference, the court may award damages to the employee even if the result "be only approximate." *Id*.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, on behalf of themselves and the proposed Collective they seek to represent in this action, request the following relief:

a) For an order certifying that Count I in this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the Collective, apprising them of the pendency of this action and permitting them to assert their FLSA claims;

b) For an order equitably tolling the statute of limitations for the potential members of the Collective;

c) For an order awarding the Plaintiffs and the Collective compensatory and statutory damages, including lost wages, earnings, and all other sums of money owed to the Plaintiffs and members of the Collective, together with interest on these amounts;

d) For an order awarding the Plaintiffs and the Collective liquidated damages as provided under the FLSA;

e) For an order certifying that Counts II and III of this Complaint be maintained as class actions pursuant to Federal Rule of Civil Procedure 23 on behalf of classes of WIS Auditors employed in the United States and Missouri, respectively during the applicable statutes of limitations; and that notice of the pendency of this action be provided to members of the Class;

f) For an order awarding the Plaintiffs and the Class compensatory and statutory damages, including lost wages, earnings, and all other sums of money owed to the Plaintiffs and members of the Class, together with interest on these amounts;

g) For an order directing WIS to identify, locate, and restore to all current and former Auditors the restitution they are due for lost wages, earnings, and other sums of money, together with interest on these amounts;

h) For pre- and post-judgment interest;

i) For an award of reasonable attorneys' fees as provided by the FLSA and MMWL, as applicable;

j) For all costs of suit; and

k) For such other and further relief as this Court deems just and proper.

## <u>COUNT IV</u>

### FLSA Retaliation (Brought on Behalf of Christina Cravens Individually)

106. Plaintiff Christina Cravens re-alleges every allegation set forth above as if set forth herein.

107. At all times relevant to this Count, Cravens was an employee of Defendant WIS.

108. In late August or early September 2023, Cravens made a complaint to her manager that WIS was unlawfully deducting hours from her pay, including deducting meal breaks she never took and deducting travel time that should have been paid.

109.    Within about a week of her complaint, WIS placed Cravens on unpaid suspension.

110.    Shortly thereafter, WIS terminated Cravens' employment.

111.    At the time of the suspension and termination, Cravens had done nothing to warrant such adverse actions.

112.    The facts and circumstances set forth above create a clear inference that Cravens was suspended and terminated in retaliation for her protected complaint that she was being improperly paid under applicable laws.

113.    As a result of WIS' unlawful retaliation, Plaintiff has lost wages, and suffered emotional pain, mental anguish, pain, suffering, humiliation, and distress.

WHEREFORE, Plaintiff Cravens asks that the Court rule in her favor on Count IV, and against Defendant WIS. That she be granted an award of back pay, front pay, compensatory damages, liquidated damages, attorneys fees and costs incurred in bringing this action, and such other legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs hereby demand a jury trial on all claims and issues for which the Plaintiffs, the Collective, and the Class are entitled to a jury.

DATED: December 19, 2023

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

By:    _/s/ John J. Ziegelmeyer III_
John J. Ziegelmeyer III          MO No. 59042
Brad K. Thoenen                  MO No. 59778
Kevin A. Todd                    MO No. 73048
HKM EMPLOYMENT ATTORNEYS
1501 Westport Road
Kansas City, MO 64111
Tel: (816) 875-3332

Pro hac vice to be filed
Email: jziegelmeyer@hkm.com
Email: bthoenen@hkm.com
Email: ktodd@hkm.com


/s/ _Cecilia N. Brennan_
Cecilia N. Brennan, Esq. (SBN 243954)
HKM EMPLOYMENT ATTORNEYS LLP
401 West A Street, Suite 200 (#77)
San Diego, California 92101
Tel/Fax: (619) 717-6410
Email:  cbrennan@hkm.com

_Attorneys for Plaintiff_